## SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* AUSTIN & WALKER.

Where, in order to avail himself of the right of action afforded by section 2317 et seq. of the Civil Code, the shipper of goods over connecting lines of railway merely gives notice to the initial carrier that the goods shipped have not been delivered to the consignee in accordance with the contract of affreightment, claiming that such goods have never arrived at destination, and thereupon demands that such carrier shall trace the goods and "show delivery," he can not, upon the failure of such carrier to comply with this demand, recover of it, by virtue of the provisions of these sections, for injury done to the goods in the course of their transportation by the negligence of an intermediate carrier, if it appear that the goods were in fact delivered to the consignee prior to the service of such notice.

Submitted June 2, — Decided July 8, 1897.

Action for damages. Before Judge Hansell. Brooks superior court. November term, 1896.

This suit was brought by the shippers of a car of melons against the initial carrier thereof, under the statute cited in

the decision. The case was referred to the decision of the judge without a jury. He found in favor of the plaintiffs the amount of damages proved; and defendant excepted.

It appears, that on July 5, 1893, the car of melons was shipped upon an express contract contained in the bill of lading by the defendant's railroad, it being the only railroad over which the shipment could be made from that point. The car was delivered in good order by defendant on the same day to the next connecting carrier, by which it was delivered on the next day to the third and last carrier. The car was consigned to Findley, Ohio. By order of the consignees, after shipment was made and the bill of lading issued, its destination was changed to Lima, Ohio, one of the consignees' place of business. The last carrier delivered the car at Lima on the 10th day after the original shipment. The melons were damaged in an admitted amount by the last named carrier, either by delay or otherwise, and plaintiffs never received any amount in payment thereof, but defendant was ignorant of the damages up to the filing of the suit. The date of the shipment was July 5th. On the 31st of the same month plaintiffs made written request of defendant's agent as follows: "You will please trace and show delivery C. & S. car 552, shipped from Dixie, July 5th, Altchell Bros., Findley, Ohio. (Car contained 1,225 melons.) Consignee claims this car never arrived." No response to this notice was received by plaintiffs or their attorneys up to the filing of the suit, which was brought on the 18th of October following. The bill of lading was the kind in use for the shipment of melons. Plaintiffs did not know of delivery of the car at Lima until after the filing of the suit. The bill of lading referred to appears to be a through bill. It acknowledges receipt of 1,225 melons consigned to Altchell Brothers, Findley, Ohio, to be transported over defendant's line from Dixie to Thomasville, Ga., and delivered in like good order to the company or carrier whose line was a part of the route to destination. The rate of freight does not appear to be embraced therein, but is left blank. The following provisions, among others, are set forth: "It is mutually agreed between the shipper and the transportation

lines and each of them over which said property is carried, as follows: The rate of freight shall not exceed that given above, and charges advanced by said lines or either of them, except in case of change of route or destination. The route by which it is intended to carry said property, or the destination of the same, may be changed by direction of the shipper, owner or consignee, or by either of said transportation lines, whenever it shall appear that such change is necessary to prevent total or partial loss of said property, from whatever cause occurring. Said lines shall not be responsible for any loss or damage resulting directly or indirectly from change of route or destination made under the provisions of this contract. If any such change in route or destination shall be made, the shipper, owner or consignee shall pay, in addition to the rate named above and charges advanced, all expenses incurred thereby, including freights for transportation over lines and parts of lines not included in the route for which said rate is named. The said several lines will not be held liable for injury to, or decay of, fruit, vegetables, or any other perishable freight, caused by detention in consequence of accumulation of freight at any point, or the breaking down of cars, locomotives or vessels, nor from any other cause, nor for any loss or damage by fire, unless such detention or fire shall be the direct result of the carrier's negligence, except as hereinafter provided; and the shipper or consignee hereby assumes the burden of proving such negligence. The said several lines shall not be liable for any loss occurring from the perishable nature or inherent defects of the property shipped hereunder. The responsibility, either as common carrier or warehouseman, of each carrier over whose line the property shipped hereunder shall be transported, shall cease as soon as delivery is made to the next carrier or to the consignee; and the liability of said lines contracted with is several and not joint; neither of the said carriers shall be responsible for or liable for any act, omission or negligence of the other carriers over whose lines said property is, or is to be, transported. Unless written demand for damage shall be made upon the company liable therefor, or upon the company which actually

delivered the goods, within ten days after delivery, no claim shall be thereafter made, nor shall any suit or proceeding be instituted to recover the same."

*Erwin, duBignon & Chisholm* and *E. P. S. Denmark*, for plaintiff in error.

SIMMONS, C. J.    This suit was brought under section 2317 et seq. of the Civil Code, wherein it is provided that "When any freight that has been shipped, to be conveyed by two or more common carriers to its destination, where under the contract of shipment or by law the responsibility of each or either shall cease upon delivery to the next 'in good order,' has been lost, damaged or destroyed, it shall be the duty of the initial or any connecting carrier, upon application by the shipper, consignee, or their assigns, within thirty days after application, to trace said freight and inform said applicant, in writing, when, where, how, and by which carrier said freight was lost, damaged or destroyed, and the names of the parties and their official position, if any, by whom the truth of facts set out in said information can be established."    And § 2318: "If the carrier to which application is made shall fail to trace said freight and give said information, in writing, within the time prescribed, then said carrier shall be liable for the value of the freight lost, damaged or destroyed, in the same manner and to the same extent as if said loss, damage or destruction occurred on its line."    The record shows that by the contract of shipment the responsibility of each carrier was to "cease upon delivery to the next 'in good order,'" and that the goods were damaged in an admitted amount by the fault of one of the carriers other than the defendant.    The notice or application was to "trace and show delivery"; and further adds: "Consignee claims this car never arrived"; and to it no response was ever made by the railway company.

This application and the company's failure to comply therewith were not, in our opinion, sufficient to entitle the applicants to recover of the company, by virtue of the provisions of the code sections under which this action was brought, for injury done to the goods in the course of their transportation by

the negligence of an intermediate carrier; it appearing that the goods were in fact delivered to the consignee prior to the service of the notice.

The shippers had, under their contract, no right of action against the initial carrier for damage to the goods occurring on the line and by reason of the negligence of an intermediate carrier, except such as they may have derived from sections 2317 et seq. of the Civil Code; and in order to avail themselves of the rights therein granted, it was necessary that they should comply with certain conditions. While by these sections it is made the duty of the railway company, "upon application," to trace freight and give information as to its loss, damage or destruction, we think that this duty is restricted and controlled by the nature of the application. It is not intended that an application to trace freight as lost shall bind the company to give information as to its damage. Had the freight concerned in this litigation been lost, the notice given would have been sufficient to impose upon the company the duty of tracing it and giving the information desired, and a failure to do so would have entitled the applicants to bring this action. Had the application been to trace the freight as damaged, then under the facts of the present case this action would have been well founded. But as matter of fact the application made in the present case was to trace the freight as lost; and such application we think insufficient to put the carrier on notice that the freight had been damaged only, or to bind the carrier to do more after it had traced the freight to the hands of the consignee. Where freight is claimed to have been damaged, application should be made to the carrier to trace it as damaged and to give the desired information as to such damage; and no such application having been here made, the court erred in finding against the railway company. The code sections relied upon do not, by either their express language or by necessary implication therefrom, require such a finding in this case; and further than so required, we can not hold the former rights of the carrier to be by these sections abrogated.

*Judgment reversed. All the Justices concurring.*